JOSEPH P. RUSSONIELLO (CASBN 44332)
United States Attorney

BRIAN J. STRETCH (CASBN 163973)
Chief, Criminal Division

JEFFREY SCHENK (CASBN 234355)
RICHARD CHENG (CASBN 135992)
Assistant United States Attorneys

   U.S. Attorney's Office
   150 S. Almaden, 9th Floor
   San Jose, CA 95113
   Telephone: (408) 535-2695/5032
   Facsimile: (408) 535-5066
   jeffrey.b.schenk@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.: CR 08-00156 JW |
| Plaintiff, | UNITED STATES' PRETRIAL CONFERENCE STATEMENT AND TRIAL MEMORANDUM |
| v. | |
| STEVEN RODRIGUEZ, | Hearing: July 24, 2008 |
| | Time: 9:00 AM |
| Defendant. | Court: Hon. J. Ware |

The United States of America, through its counsel Jeffrey Schenk and Richard Cheng, Assistant United States Attorneys, hereby submits its Pretrial Conference Statement and Trial Memorandum in the above-captioned case.

I.    STATEMENT OF EVIDENCE

    A.    Charges

A federal grand jury returned a one count indictment against the defendant on March 12, 2008 charging him with a violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm and ammunition. The defendant was arraigned on the indictment on April 10, 2008 and pleaded not guilty. On July 9, 2008, the grand jury returned a superseding indictment against the

defendant charging him with one additional count of 18 U.S.C. § 922(g)(3), controlled substance user in possession of a firearm and ammunition.  Defendant is expected to plead not guilty to the additional count at his arraignment on July 17, 2008.  The last day for Speedy Trial Act purposes is July 24, 2008.  However, the Court issued in a minute order on July 8, 2008 excluding time "sufficient to start trial on August 5, 2008."

      B.      Facts

           In the morning of February 23, 2007, the Santa Cruz Sheriff's Department was dispatched to 1535 San Andreas Rd. in Watsonville, California, to investigate a report of a man with a shotgun in the parking lot.  1535 San Andreas Road is the address of the Manresa Lodge, which was owned and operated by Sophia Watkins.  Watkins lived on the ground floor with her four children.  Steven Rodriguez, who was on active CDC parole for a felony domestic violence conviction, periodically lived with Watkins in her ground floor apartment.  Rodriguez and Watkins had been romantically involved, but apparently were not in a relationship on February 23.

           The Manresa Lodge has two apartments (numbered 3 and 4) located on the second floor.  On February 23, apartment #3 was occupied by Thomas Houston and apartment # 4 was occupied by Brian "Ted" Anderson and Peggy Spannbauer.

           At about 7:30 a.m. on the morning of February 23, Thomas Houston noticed Steven Rodriguez roaming the parking lot with a shotgun. Houston called Peggy Spannbauer, a friend of Rodriguez, in the hope that she would be able to persuade him to put the gun down without the need for police intervention. Spannbauer looked out her window and saw Rodriguez circling the parking lot holding the shotgun, crying "Sophia."  Spannbauer told her roommate, Brian "Ted" Anderson, what she saw.  Anderson called the police.  Spannbauer convinced Rodriguez to come upstairs, and she tried to calm him, but he told her he did not want her involved in the situation.

           While upstairs, Rodriguez approached Houston's apartment and asked if he could come in to brush his teeth or get some water.  Houston, who was on probation after a felony

conviction, told him he could not come in with the shotgun. Rodriguez asked for help unloading the gun, but Houston told him he could not help, and that Rodriguez would have to leave the gun outside. After some time, Rodriguez agreed. He wiped his fingerprints from the gun, wrapped it in a towel and left it outside the apartment, then came inside Houston's apartment. Rodriguez sat inside the apartment talking with Houston. At approximately 8:30 a.m., the Sheriff's Department arrived, and Houston and Rodriguez emerged from the apartment at the request of the officers. Rodriguez was verbally resistant and slow to comply with the Deputy's commands, but the Deputy was eventually able to talk him down from the upstairs balcony and he was arrested without incident.

Rodriguez told the officers that he came to be in possession of the shotgun after disarming Watkins during a fight they had earlier in the morning. He claimed that the gun had hit her face as he yanked it away from her, leaving a red mark. He also explained that Watkins had locked him out of the house, leaving him nowhere to put the gun; he was afraid to leave the weapon unattended in the apartment complex because he did not trust his neighbors. At one point, Rodriguez claimed that he expected someone to call the police, and that he planned to give them the gun when they arrived. He admitted, however, that he knew he was not supposed to have firearms. Watkins was interviewed the next day by officers. She denied the altercation, and did not have any red marks on her face. She said that she had left the house with her children because Rodriguez was talking to himself and appeared to be under the influence of drugs. She admitted to owning the gun, but claimed that Rodriguez must have found it by searching through her possessions, and that he had retrieved it himself. Both parties agreed that Watkins had left the scene around 7:30 a.m. with her children, locking Rodriguez out of the apartment.

On the day of his arrest, February 23, 2007, Rodriguez was taken to Dominican Hospital for a blood draw. He tested positive for methamphetamine, amphetamine, and cocaine. He was then transported to the county jail. In conversations with officers, he admitted amphetamine/methamphetamine use. Further investigation by agents revealed that on 2/8/07, Rodriguez had given a urine test analysis positive for amphetamine/methamphetamine.

Additionally, he has a long history of drug use. He was incarcerated on a domestic violence conviction from January to November 2004, and continued to use illegal drugs after being paroled. He has failed roughly fifteen (15) drug tests.

C. <u>Interstate Commerce of the Handgun</u>

The firearm recovered was a Remington Model 870 12 gauge pump-action shotgun, serial number V631321V. One round of 12 gauge ammunition contained the head-stamp "R-P"; another round of 12 gauge ammunition contained the head-stamp "Peters"; another round of 12 gauge ammunition contained the head-stamp "Duck Symbol"; the last two rounds of 12 gauge ammunition contained the head-stamp "Sellier & Bellot." The firearm was manufactured outside California by the Remington Corporation in New York before it traveled in interstate commerce and was received and possessed in California. The "R-P" ammunition was manufactured in Arkansas or Connecticut; the "Peters" ammunition was manufactured in Ohio; the "Duck Symbol" ammunition was manufactured in Minnesota; and the "Sellier & Bellot" ammunition was manufactured in the Czech Republic, all before traveling in interstate commerce and being received and possessed in California.

D. <u>Prior Felony Convictions.</u>

Prior to February 23, 2007, the defendant had the following felony convictions: a Salinas conviction for inflicting corporal injury on a spouse/cohabitant, on February 4, 1999; a Monterey conviction for inflicting corporal injury on a spouse/cohabitant on January 5, 2004.

E. <u>Physical Evidence</u>

The handgun and ammunition (5 unfired 12 gauge rounds) will be presented, along with various photographs taken on February 23, 2007.

II. STATEMENT OF THE LAW.

A. Violation of 18 U.S.C. § 922(g)(1)

**1. Elements of the offense**

In the first count of the indictment, the defendant is charged with being a felon in possession of a firearm in violation of Section 922(g)(1) of Title 18 of the United States Code. The elements of the offense are:

- the defendant knowingly possessed the firearm as described in the indictment;

- the firearm had been shipped or transported from one state to another, or from a foreign nation to the United States; and

- at the time the defendant possessed the firearm, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year.

2. **Knowingly Possessed**

The government must prove that the defendant knowingly possessed the firearm. It is immaterial how long the defendant possessed either the firearm or ammunition. Courts have held that "even if a felon held a firearm for a mere second or two, unless that felon truly did not know that what he possessed was a firearm . . ., § 922(g) will still impose criminal liability." *United States v. Adkins*, 196 F.3d 1112, 1115 (10th Cir. 1999); *see also United States v. Lane*, 267 F.3d 715, 717 (7th Cir. 2001) ("momentarily handling a gun satisfied the legal definition of 'possession' as a matter of law"); *United States v. Parker*, 566 F.2d 1304, 1306 (5th Cir. 1978) ("That possession is momentary is immaterial.").

The legislative history relating to § 922(g) shows that "Congress intended to prohibit felons from exercising any physical control over a gun." *Lane*, 267 F.3d at 718. The Seventh Circuit noted:

> Physical control over a gun is remarkably easy to effect. Once the gun is in the defendant's hands he need only pull the trigger, an act which can be completed in a split second and which is controlled and influenced by nothing more than the defendant's whim.

*Id.* As such, any knowing possession of a firearm or ammunition by a felon – no matter how short – violates the statute.

The law is also clear that two people can possess the same firearm. In the Ninth Circuit, defendants can jointly possess a firearm in violation of § 922(g)(1) if "each knows of its

presence and has the power and intention to control it." *See* Ninth Circuit Model Jury Ins., No. 3.18 (2003).

### 3. **Interstate Commerce**

The government must prove that the firearm has been shipped or transported from one state to another or from a foreign nation. *See United States v. Hanna*, 55 F.3d 1456, 1462 (9th Cir. 1995) (holding that 18 U.S.C. § 922(g) requires only "the minimal nexus that a firearm have been, at some time, in interstate commerce"). The government is not required to prove that the defendant knew that the firearm or ammunition had moved in interstate commerce. *See United States v. Miller*, 105 F.3d 552, 555 (9th Cir. 1997) (holding that "knowledge requirement applies only to the possession element of § 922(g)(1), not the interstate nexus or to felon status").

The ATF agent here – Thomas Cunningham – has been qualified as an expert witness in the United States District Courts for the Northern and Eastern Districts of California. The Ninth Circuit held in *United States v. Dunn* that an ATF agent could provide expert testimony regarding the identity of a gun's manufacturer and where that manufacturer was located "to establish that a gun traveled in interstate commerce before the defendant received it." *United States v. Dunn*, 946 F.2d 615, 618 (9th Cir. 1991); *see also United States v. Beasley,* 346 F.3d 930, 936 (9th Cir. 2003). In *United States v. Gann*, an ATF agent was allowed to provide expert testimony regarding where ammunition was manufactured based upon "characteristic shell markings and stamps." *United States v. Gann*, 732 F.2d 714, 724 (9th Cir. 1984). And, in *United States v. Alvarez*, an ATF agent provided expert testimony that a firearm was manufactured in Spain based in part on the markings on the firearm: "Garnika, Spain." *United States v. Alvarez*, 972 F.2d 1000, 1003-04 (9th Cir. 1992).

In addition, the Ninth Circuit has held that inscriptions on a firearm are self-authenticating and fully admissible to prove where the gun had been manufactured. *Alvarez*, 972 F.2d at 1004.

### 4. **Felony Conviction**

1  The government must prove that at the time he possessed the firearm or ammunition, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year.

B.  Violation of 18 U.S.C. 922(g)(3)

1. **Elements of the offense**

In the second count of the indictment, the defendant is charged with being a felon in possession of a firearm in violation of Section 922(g)(3) of Title 18 of the United States Code. The first two elements of the offense track the elements of 18 U.S.C. 922(g)(1):

- the defendant knowingly possessed the firearm as described in the indictment;
- the firearm had been shipped or transported from one state to another, or from a foreign nation to the United States.

The final element of a 922(g)(3) offense is that

- at the time the defendant possessed the firearm, the defendant was an unlawful user of or addicted to any controlled substance, as defined in section 102 of the Controlled Substances Act, 21 U.S.C. § 802.

2. **Unlawful User of Any Controlled Substance**

21 U.S.C. § 802(6) defines "controlled substance" to be any "drug or other substance, or immediate precursor," listed in schedules I, II, III, IV, or V in 18 U.S.C. § 812. Cocaine, methamphetamine, and amphetamine are all schedule II drugs. 18 U.S.C. § 812.

"Neither § 922[g](3)[1] nor its legislative history provides a definition of 'unlawful user.'" *United States v. Ocegueda*, 564 F.3d 1363, 1365 (9th Cir. 1977). Courts give the phrase "a common sense meaning," *id.* at 1365, and the term has withstood as-applied vagueness challenges. *See id.* (holding that, given defendant's consistent record of heroin use, term 'unlawful user' was not vague; limiting Ninth Circuit precedent allowing vagueness challenges); *United States v. Purdy*, 264 F.3d 809 (9th Cir. 2001) (finding no vagueness problem under facts of case); *United States v. Edwards*, 182 F.3d 333 (5th Cir. 1999) (same).

---

[1] At the time of that case, the relevant provision was codified at 18 U.S.C. 922(h)(3). It is now codified at 18 U.S.C. 922(g)(3).

UNITED STATES' TRIAL BRIEF
CR 08-00156 JW                                7

The Ninth Circuit has held that the government must prove that the defendant "took drugs with regularity, over an extended period of time, and contemporaneously with his purchase of the firearm" in order to sustain a conviction under 922(g)(3). *Purdy*, 264 F.3d at 812-13. In that case, the defendant had admitted to using marijuana and methamphetamine regularly, as well as operating a methamphetamine laboratory, but was not using drugs at the time of his firearm possession arrest. In another Ninth Circuit case, the defendant's heroin use over a period of seven years, including a misdemeanor charge and enrollment in a misdemeanor program, was sufficient to bring the defendant within the ambit of the statute. *Oceguada*, 564 F.3d at 1364. *See also United v. McIntosh*, 23 F.3d 1454 (testimony from acquaintances and officers that defendant had admitted using marijuana sufficed).

The Ninth Circuit has not answered the question of whether regular and prolonged use must be shown where a defendant is using drugs *while* possessing the firearm. An Eighth Circuit case implies that such a showing might be sufficient. *United States v. McIntosh*, 23 F.3d 1454, 1458 (1994) (labeling defendant's theory that government must prove use of controlled substance contemporaneous with firearm possession "too restrictive[]," and allowing lesser showings to sustain a conviction). One district court, however, found that regular and prolonged use must be proven even when the defendant was unquestionably using drugs at the time of the arrest. *United States v. Williams*, 216 F. Supp. 2d 568 (E.D. Va. 2002).

III. JENCKS, BRADY AND GIGLIO DISCLOSURE (Crim. L.R. 17.1-1(b)(1-3))

The United States has provided some and will provide the defense with copies of all reports and police reports, defendant's criminal history, witness interviews, defendant's statement and developed photographs known to the prosecution, and will make arrangements upon request for the defense attorney to inspect evidence seized. As any new information is obtained, it will be provided to the defense.

The United States believes that it has supplied all materials which may be relevant as *Brady* material, and recognizes its obligation to continue to provide any such materials within its possession, custody or control. The government also understands its

1  continuing duty to comply with Rule 16 and will do so.

2      As of this date, the United States is not aware of any material exculpatory or
3  impeachment information concerning the witnesses expected to testify in its case in chief that
4  would be subject to disclosure pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v.*
5  *United States*, 405 U.S. 150 (1972), *United States v. Bagley*, 473 U.S. 667 (1985), and/or *United*
6  *States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991).

7      The United States requested discovery from the defendant by letter dated July 18,
8  2007 for discovery pursuant to Federal Rules of Criminal Procedure, Rule 16, Rule 12.1 and
9  Rule 26.2.  As of this date, the United States has received no witness statements from the
10 defendant or alibi information.  The United States requests that the defendant be directed to
11 comply with the discovery rules.

12 IV.   STIPULATIONS (Crim. L.R. 17.1-1(b)(4))

13     There are currently no stipulations.  After discussions between government and
14 defense counsel, the government believes the parties will enter into three (3) stipulations:
15 concerning the defendant's prior felony conviction; concerning the interstate nexus of the
16 firearm and ammunition; and concerning prior positive drug tests by the defendant.  Any
17 stipulations will be presented to the Court upon entering them.

18 V.   NEED FOR INTERPRETERS (Crim. L.R. 17.1-1(b)(5))

19     The government will not need interpreters for any witnesses it intends to call.

20 VI.   DISMISSAL OF COUNTS/ELIMINATION OF ISSUES (Crim. L.R. 17.1-1(b)(6))

21     Two counts are currently alleged against the defendant.  The government does not
22 anticipate the dismissal of any counts.

23 VII.   JOINDER/SEVERANCE (Crim. L.R. 17.1-1(b)(7))

24     There are no joinder or severance issues.

25 VIII.   INFORMANTS/PRIOR CONVICTIONS (Crim. L.R. 17.1-1(b)(8))

26     The government is not using any informants.  Two witnesses have suffered prior
27 convictions.  Thomas Houston has at least one prior felony conviction.  Sophia Watkins was

28

convicted of misdemeanor fraud or forgery with intent to obtain aid, and sentenced to probation. She was also arrested several times, mostly on charges related to marijuana. Peggy Spannbauer does not have a criminal record. NCIC records showed no match for Brian Anderson.

IX.  WITNESSES (Crim. L.R. 17.1-1(b)(9))

The United States may call any of the witnesses listed below. The United States reserves the right to amend that list at any time prior to and during the trial, if necessary.

Witnesses

Santa Cruz Sheriff's Office Deputies: Daniel Frietas, Tate Howe, Matthew Pursley, Shay Johnson, Jose Zamora, Val Brenner

Merced County Sheriff's Office Deputy: Leon Pintabona

Santa Cruz Probation Officer: Jorge Rocha

Civilian witnesses: Sophia Watkins, Brian Anderson, Peggy Spannbauer, Thomas Houston

Expert/technical witnesses: Thomas Cunningham, ATF; Lola Crain, Santa Cruz Consolidated Emergency Communications Center Custodian of Records

X.  EXHIBITS (Crim. L.R. 17.1-1(b)(10))

The United States may present any/all of the following exhibits:

Ex. 1: Color photograph of Steven Rodriguez standing next to police car

Ex. 2: Color photograph of 1535 San Andreas Road

Ex. 3: Color photograph of 1535 San Andreas Road parking lot and adjacent street

Ex. 4: Color photograph of balcony outside Room #3, including Remington Model 870 12 gauge pump-action shotgun, serial number V631321V, propped against railing

Ex. 5: Color photograph of Remington Model 870 12 gauge pump-action shotgun, serial number V631321V

Ex. 6: Remington Model 870 12 gauge pump-action shotgun, serial number V631321V

        Ex. 7: One round of 12 gauge ammunition with head-stamp "R-P"

        Ex. 8: One round of 12 gauge ammunition with head-stamp "Peters"

        Ex. 9: One round of 12 gauge ammunition with head-stamp "Duck Symbol"

        Ex. 10: Two rounds 12 gauge ammunition with head-stamp "Sellier & Bellot"

The government reserves the right to supplement the list as needed.

## XI. OBJECTIONS TO EXHIBITS OR TESTIMONY (Crim. L.R. 17.1-1(b)(11))

The government is not aware of any objections that the defendant has to any government exhibits. Because the government has not been informed of any of the defendant's exhibits, the government has not had an opportunity to consider whether it will raise any objections. In the event the defendant or the government does raise any such objections, the government will attempt to resolve them.

## XII. LEGAL ISSUES LIKELY TO ARISE AT TRIAL (Crim. L.R. 17.1-1(b)(12))

The United States will be filing motions *in limine* to preclude defendant from raising the defense of self-defense, to preclude a self-defense jury instruction from being given, and to preclude certain statements from being admitted at trial. The motion will likely be opposed by the defense..

## XIII. SCHEDULING (Crim. L.R. 17.1-1(b)(13))

The United States anticipates that presentation of its case-in-chief will last approximately two days, depending on *in limine* rulings.

## XIV. JURY VOIR DIRE (Crim. L.R. 17.1-1(b)(14))

The United States will submit proposed voir dire questions.

## XV. JURY INSTRUCTIONS (Crim. L.R. 17.1-1(b)(14))

The government expects the parties attempt to prepare jointly-submitted proposed jury instructions. To the extent the parties are not able to agree on certain instructions, the United States will separately file proposed jury instructions.

XVI. <u>OTHER ISSUES (Crim. L.R. 17.1-1(b)(15))</u>

The United States requests an order compelling the defense to provide reciprocal discovery, including an exhibit list, to the government prior to trial.

DATED: July 21, 2008

                              Respectfully submitted,

                              JOSEPH P. RUSSONIELLO
                              United States Attorney

By:  __/s/_____
       JEFFREY B. SCHENK
       Assistant United States Attorney

UNITED STATES' TRIAL BRIEF
CR 08-00156 JW                                13