JOSEPH P. RUSSONIELLO (CASBN 44332)
United States Attorney

BRIAN J. STRETCH (CASBN 163973)
Chief, Criminal Division

JEFFREY SCHENK (CASBN 234355)
RICHARD CHENG (CASBN 135992)
Assistant United States Attorneys

U.S. Attorney's Office
150 S. Almaden, 9th Floor
San Jose, CA 95113
Telephone: (408) 535-2695/5032
Facsimile: (408) 535-5066
jeffrey.b.schenk@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>STEVEN RODRIGUEZ,<br><br>    Defendant. | No.: CR 08-00156 JW<br><br>UNITED STATES' MOTIONS IN LIMINE TO PRECLUDE SELF-SERVING HEARSAY, TO ADMIT EVIDENCE OF PRIOR CONVICTIONS, TO PRECLUDE REFERENCES TO GOVERNMENT CHARGING DECISIONS<br><br>Hearing: July 24, 2008<br>Time: 9:00 AM<br>Court: Hon. J. Ware |

    The United States of America, through its counsel Jeffrey Schenk and Richard Cheng, Assistant United States Attorneys, hereby submits the following motions in limine in the above-captioned case.

**I. INTRODUCTION**

    The defendant is charged by indictment with two counts, 18 U.S.C. § 922(g)(1), Felon in Possession of Firearm and Ammunition and 18 U.S.C. § 922(g)(3) Controlled Substance User in Possession of a Firearm and Ammunition. The government wishes to preclude the defense from

asserting a defense of justification or necessity and prevent the jury from receiving a self-defense justification or necessity jury instruction.

## II. FACTUAL BACKGROUND

On February 23, 2007, at approximately 0830, the Santa Cruz Sheriff's Department was dispatched to 1535 San Andreas Rd., the Manresa Lodge, in Watsonville, California, to investigate a report of a man with a shotgun in the parking lot of the Lodge. Upon arrival, the Sheriff's Deputies were informed by Dispatch that the suspect who possessed the shotgun was currently inside apartment #3, located upstairs in the building. The deputies set up a perimeter around the building, but before they attempted to contact the occupants, a man in a green bathrobe and a hispanic male with a shaved head and goatee emerged from the apartment. The Hispanic male was verbally resistant and slow to comply with the Deputy's commands. After several moments, the Deputy was able to talk the male down from the balcony and he was taken into custody without incident. The man in the bathrobe was the occupant of apartment #3, Thomas Houston, and the Hispanic male was Steven Rodriguez. Steven Rodriguez was on active CDC parole for domestic violence.

Earlier that morning, three neighboring occupants of the apartment building, Houston, Peggy Spannbauer and Brian "Ted" Anderson, saw Steven Rodriguez in the Lodge's parking lot in possession of a shotgun. First to notice Rodriguez' behavior, Houston called Peggy Spannbauer, at approximately 0730, to tell her that Steven Rodriguez was outside with the shotgun. Spannbauer relayed this information to her roommate Anderson. Spannbauer had known Rodriguez for one and a half years. In response to the phone call, Spannbauer looked outside and saw Rodriguez holding a shotgun in the air screaming "Sophia," the name of his girlfriend and manager of the Lodge. Anderson advised Spannbauer to call the police and she refused. Rodriguez came up the stairs to her apartment and Spannbauer tried to get him to give her the gun. He refused, saying he did not want her involved in the situation. Anderson then called 9-1-1 to report Rodriguez' behavior. Shortly afterwards, from inside her apartment,

UNITED STATES' MOTIONS IN LIMINE
CR 08-00156 JW                                         2

1   Spannbauer heard Houston trying to get Rodriguez to unload the weapon. Rodriguez did not
2   know how to unload it, so Houston told him to leave it outside if he wanted to come into his
3   apartment. Rodriguez complied, first wiping his fingerprints from the weapon and then entering
4   the apartment. Earlier, Watkins had left her and Rodriguez' shared apartment with her children
5   and intentionally locked him out. At approximately 0830, Rodriguez and Houston emerged from
6   room #3 at the request of the Santa Cruz Sheriff's Department.

7   Rodriguez told officers that he came to be in possession of the shotgun after disarming
8   Watkins after a fight earlier in the morning. He stated that when he yanked the gun from her, it
9   hit her face causing a red mark. Additionally he said that he was afraid to leave the weapon
10  unattended in the apartment complex because he did not trust his neighbors. When officers
11  interviewed Watkins, she denied the altercation and she had no marks or bruising on her face.
12  She maintained that the gun belonged to her sixteen year old son and that she had removed
13  herself and her children from the house because Rodriguez was talking to himself. She stated
14  that he retrieved the shotgun himself.

15  On the day of his arrest, February 23, 2007, Rodriguez was taken to Dominican Hospital
16  for a blood draw. He tested positive for methamphetamine, amphetamine, and cocaine. He was
17  then transported to the county jail.

### III. ARGUMENT

**A. Defendant Cannot Introduce Statements He Made to Law Enforcement**

Federal Rule of Evidence 801(d)(2) provides that a statement is not hearsay if it is offered <u>against</u> a party and is the party's own statement. It is clear that a criminal defendant's extrajudicial statements to law enforcement officers would be admissible as non-hearsay if offered by the Government against the defendant. It is equally clear that a defendant is not a party-opponent of himself and the identical extrajudicial statements of the defendant are inadmissible hearsay if offered by the defendant on his own behalf against the Government. *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988); *United States v. Dorrell*, 758 F.2d 427, 434 (9th Cir. 1985); and *United States v. Rea*, 958 F.2d 1206, 1225 (9th Cir. 1992).

The Ninth Circuit applied this rule in *United States v. Ortega*, 203 F.3d 675 (9th Cir. 2000). The defendant had given a broadly inculpatory statement that included certain exculpatory statements. The district court held that the government could introduce only the inculpatory parts of the confession, while precluding the defense from introducing the exculpatory statements. The Ninth Circuit affirmed. The court reasoned that "[t]he self-inculpatory statements, when offered by the government, are admissions by a party-opponent and are therefore not hearsay . . . but the non-self-inculpatory statements are inadmissable hearsay." Therefore, "[i]f the district court were to have ruled in his favor, Ortega would have been able to place his exculpatory statements 'before the jury without subjecting [himself] to cross-examination, precisely what the hearsay rule forbids.'" *Id.* at 682 (quoting *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1998)). The court also found that the rule of completeness was not implicated because it only applied to written and recorded statements, but that even if it had applied, "exclusion of Ortega's exculpatory statements was proper because these statements would have constituted inadmissible hearsay." 203 F.3d at 682.

In this case, defendant Rodriguez was interviewed by law enforcement officers following his arrest on February 23, 2007. At that time, he made various statements which constituted knowledge that he was aware that it was against the law for him to be in possession of a firearm. The officer confirmed that Rodriguez knew he was a parolee and that possession of a firearm was illegal. If the government offers these portions of Rodriguez' statement at trial, they are admissible as the admissions of a party-opponent. However, as in *Ortega*, the exculpatory portions of the confession are inadmissible hearsay if offered by defendant Rodriguez at trial on his own behalf. Moreover, like *Ortega*, the rule of completeness does not require or allow the government to introduce the hearsay exculpatory portions of Rodriguez' statement. The Government therefore requests a pretrial ruling that it may enter only the inculpatory portions of the confession into evidence, and that the defense be prohibited from referring to defendant Rodriguez's denials during the confession at any time during the trial, including during voir dire, opening and closing argument, and cross-examination.

**B. Admit Defendant's Prior Convictions for Impeachment Should Defendant Testify**

The United States moves to admit the defendant's prior convictions under Federal Rules of Evidence, Rule 609(a) to impeach defendant should he elect to testify. Defendant has multiple prior convictions, but the United States requests the admission of his two prior Cal. Penal Code § 273.5 (A) - Inflict Corporal Injury Spouse convictions.

<u>The Probation Value of the Defendant's Injury to Spouse Convictions Substantially Outweigh their Prejudicial Effect under the 9th Circuit's Five-Part Test</u>

A five-part balancing test outlined by the Ninth Circuit in *United States v. Cook,* 608 F.2d 1175, 1185 n.8 (9th Cir. 1979) (*en banc*), *cert denied,* 444 U.S. 1034 (1980), *overruled on other grounds, Luce v. United States,* 469 U.S. 38 (1984) (cited in *United States v. Alexander,* 48 F.3d 1477, 1488 (9th Cir. 1994)), sets forth the appropriate factors for the Court to consider in weighing the probative value of the prior convictions against their prejudicial effect. *See United States v. Browne,* 829 F.2d 760, 762-763 (9th Cir. 1987), *cert. denied*, 485 U.S. 991 (1988).

1. <u>Impeachment value of prior crimes</u>.

Assuming the defendant takes the stand and testifies in support of his contention that he took the firearm from Sophia Watkins in self-defense during a struggle with her, his prior conviction for injury to a spouse is highly probation. In light of his prior convictions, a jury could reasonably conclude that the defendant was the aggressor in the struggle with Ms. Watkins. If the evidence tends to suggest that the defendant created the situation in which he needed to act in self-defense, the justification defense is unavailable. *United States v. Beasley,* 346 F.3d 930 (9th Cir. 2003).

2. <u>Point in time of conviction and defendant's subsequent history</u>.

The prior conviction we seek to introduce occurred well within the past ten years, the washout period under Rule 609(b).

3. <u>Similarity between past and charged crimes</u>.

The prior crime, spouse abuse, and the charged offenses are not similar. In any event, similarities do not trump the issue of admissibility. The Ninth Circuit has held that "a prior bank robbery conviction [is] not inadmissable per se, merely because the offense involved was

identical to that for which [the defendant] was on trial." *United States v. Alexander,* 48 F.3d at 1488. Rather, the trial court must balance all five *Cook* factors. Furthermore, a lack of similarity between the charged offense and the defendant's priors eliminates the risk that a jury will convict due to inappropriate "*once a spouse abuser, always a felon in possession*" logic.

4–5. <u>Importance of testimony/centrality of defendant's credibility</u>.

Any claim that a testimonial denial by defendant of his gun possession is not important or does not put his credibility at the center of the case is simply not true. In *Alexander,* the defendant argued that "his credibility was not central to the case, because other evidence corroborated his alibi defense." 48 F.3d at 1489. The Ninth Circuit squarely rejected this argument: "When a defendant takes the stand and denies having committed the charged offense, he places his credibility directly at issue." *Id.* (citing numerous cases).

Here, as with most criminal cases, the United States has no idea what the defendant will say on the stand if he chooses to testify. However, it is difficult to imagine any circumstance in which the defendant would elect to testify and not make self-serving statements that put his credibility at issue. For the defendant to suggest that his credibility is not central should he testify would be fanciful.

The importance of putting defendant's testimony in proper light for the jury cannot be overstated. If the defendant testifies and the United States is not permitted to impeach the defendant with his prior conviction, the jury would likely be left with a false impression about the defendant's trustworthiness as a testifying witness. As the Ninth Circuit observed in *United States v. Cook,* 608 F.2d at 1187:

> It is not surprising that the [district] court was unwilling to let a man with a substantial criminal history misrepresent himself to the jury, with the government forced to sit silently by, looking at a criminal record which, if made known, would give the jury a more comprehensive view of the trustworthiness of the defendant as a witness.

The United States respectfully submits that the foregoing analysis of the five *Cook* factors clearly yields the conclusion that the probative value of the defendant's prior conviction substantially outweighs any prejudicial effect, even in light of a stipulation to the defendant's status as a felon.

The prejudice of admission of the prior convictions is not overwhelming. Any such prejudice can be moderated by the jury instruction: "You may consider that evidence [of defendant's prior conviction] *only* as it may affect defendant's believability as a witness. You may not consider a prior conviction as evidence of guilt of the crime for which the defendant is now on trial." 9TH CIR. CRIM. JURY INSTR. 4.6 (2003) (emphasis added). It must be assumed that the jury will follow the instructions given to it. *See United States v. Nelson*, 137 F.3d 1094, 1107 (9th Cir. 1998) ("[T]he district court gave detailed limiting instructions in order to curtail any unfair prejudice that Nelson might suffer. This court can presume that the jury followed these instructions.").

**C. Preclude the defense from commenting on the government's charging decisions**

The government expects the defense may argue that the government could/should have charged other individuals/witness (e.g. Ms. Sophia Watkins) for conduct similar to the charges the defendant is facing. The defense should be precluded from arguments of this type for two reasons: First, this line of argument asks the jury to speculate in direct conflict with specific jury instructions. Second, both charges the defendant is facing (felon in possession of a firearm and drug abuser in possession of a firearm) are crimes which may be committed by more than one individual. Therefore, evidence tending to incriminate another individual in this case is irrelevant evidence.

The 9th Circuit Model Jury Instruction for the term "reasonable doubt" asks the jury not to speculate. "A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation." 9TH CIR. CRIM. JURY INSTR. 3.5 (2003) Since a defense argument asking the jury to speculate on other possible guilty parties would beg the jury to violate its duties and obligations. This line of argument should be excluded.


1  Furthermore, § 922(g)(1) and (g)(3) are crimes which may be committed by more than
2  one individual at the same time. The 9th Circuit Model Jury Instruction for the term "possession"
3  specifically acknowledges this concept. "More than one person can be in possession of
4  something if each knows of its presence and has the power and intention to control it." 9TH CIR.
5  CRIM. JURY INSTR. 3.18 (2003)   Evidence tending to suggest that one individual/witness in this
6  case is guilty of either § 922(g)(1) or (g)(3) is not probative of the defendant's innocense or
7  culpability.   And, in light of its lack of probative value, such evidence is irrelevant.

## IV. CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court grant the United States' Motion in Limine to preclude self-serving hearsay and admit prior convictions for impeachment should defendant testify..

DATED: July 21, 2008

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney


__/s/_____
JEFFREY B. SCHENK
Assistant United States Attorney