JOSEPH P. RUSSONIELLO (CASBN 44332)
United States Attorney

BRIAN J. STRETCH (CASBN 163973)
Chief, Criminal Division

JEFFREY SCHENK (CASBN 234355)
RICHARD CHENG (CASBN 135992)
Assistant United States Attorneys

U.S. Attorney's Office
150 S. Almaden, 9th Floor
San Jose, CA 95113
Telephone:  (408) 535-2695/5032
Facsimile: (408) 535-5066
jeffrey.b.schenk@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN RODRIGUEZ, <br><br> Defendant. | No.: CR 08-00156 JW <br><br> UNITED STATES' MOTION IN LIMINE TO PRECLUDE DEFENSE OF JUSTIFICATION OR NECESSITY <br><br> Hearing:   July 24, 2008 <br> Time:      9:00 AM <br> Court:     Hon. J. Ware |

The United States of America, through its counsel Jeffrey Schenk and Richard Cheng, Assistant United States Attorneys, hereby submits the following motions in limine in the above-captioned case.

**I. INTRODUCTION**

The defendant is charged by indictment with two counts, 18 U.S.C. § 922(g)(1), Felon in Possession of Firearm and Ammunition and 18 U.S.C. § 922(g)(3) Controlled Substance User in Possession of a Firearm and Ammunition. The government wishes to preclude the defense from asserting a defense of justification or necessity and prevent the jury from receiving a self-defense justification or necessity jury instruction.

## II. FACTUAL BACKGROUND

On February 23, 2007, at approximately 0830, the Santa Cruz Sheriff's Department was dispatched to 1535 San Andreas Rd., the Manresa Lodge, in Watsonville, California, to investigate a report of a man with a shotgun in the parking lot of the Lodge. Upon arrival, the Sheriff's Deputies were informed by Dispatch that the suspect who possessed the shotgun was currently inside apartment #3, located upstairs in the building. The deputies set up a perimeter around the building, but before they attempted to contact the occupants, a man in a green bathrobe and a hispanic male with a shaved head and goatee emerged from the apartment. The Hispanic male was verbally resistant and slow to comply with the Deputy's commands. After several moments, the Deputy was able to talk the male down from the balcony and he was taken into custody without incident. The man in the bathrobe was the occupant of apartment #3, Thomas Houston, and the Hispanic male was Steven Rodriguez. Steven Rodriguez was on active CDC parole for domestic violence.

Earlier that morning, three neighboring occupants of the apartment building, Houston, Peggy Spannbauer and Brian "Ted" Anderson, saw Steven Rodriguez in the Lodge's parking lot in possession of a shotgun. First to notice Rodriguez' behavior, Houston called Peggy Spannbauer, at approximately 0730, to tell her that Steven Rodriguez was outside with the shotgun. Spannbauer relayed this information to her roommate Anderson. Spannbauer had known Rodriguez for one and a half years. In response to the phone call, Spannbauer looked outside and saw Rodriguez holding a shotgun in the air screaming "Sophia," the name of his girlfriend and manager of the Lodge. Anderson advised Spannbauer to call the police and she refused. Rodriguez came up the stairs to her apartment and Spannbauer tried to get him to give her the gun. He refused, saying he did not want her involved in the situation. Anderson then called 9-1-1 to report Rodriguez' behavior. Shortly afterwards, from inside her apartment, Spannbauer heard Houston trying to get Rodriguez to unload the weapon. Rodriguez did not know how to unload it, so Houston told him to leave it outside if he wanted to come into his apartment. Rodriguez complied, first wiping his fingerprints from the weapon and then entering

UNITED STATES' MOTION IN LIMINE TO PRECLUDE JUSTIFICATION DEFENSE
CR 08-00156 JW                                    2

the apartment. Earlier, Watkins had left her and Rodriguez' shared apartment with her children and intentionally locked him out. At approximately 0830, Rodriguez and Houston emerged from room #3 at the request of the Santa Cruz Sheriff's Department.

Rodriguez told officers that he came to be in possession of the shotgun after disarming Watkins after a fight earlier in the morning. He stated that when he yanked the gun from her, it hit her face causing a red mark. Additionally he said that he was afraid to leave the weapon unattended in the apartment complex because he did not trust his neighbors. When officers interviewed Watkins, she denied the altercation and she had no marks or bruising on her face. She maintained that the gun belonged to her sixteen year old son and that she had removed herself and her children from the house because Rodriguez was talking to himself. She stated that he retrieved the shotgun himself.

On the day of his arrest, February 23, 2007, Rodriguez was taken to Dominican Hospital for a blood draw. He tested positive for methamphetamine, amphetamine, and cocaine. He was then transported to the county jail.

### III. ARGUMENT

**A. Justification Defense Unavailable As a Matter of Law**

The courts have ruled that federal firearms laws impose something approaching absolute liability on felons in possession of weapons. *United States v. Nolan*, 700 F.2d 479, 484 (9th Cir. 1983). The 9th Circuit Court of Appeals had refused to recognize defenses to 18 U.S.C. § 922 (g)(1) which inquire into the motive or purpose of the felon's possession of a firearm, such as "innocent possession" or "transitory possession," instead stating that Congress would have created these affirmative defenses if they wished them in the statute. *United States v. Johnson*, 459 F.3d 990, 997-98 (9th Cir. 2006). To interpose a justification defense to a charge of violating the felon in possession statute, the defendant must demonstrate that (1) he was under unlawful and present threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative; and (4) there was a direct causal relationship between the criminal action and the

1 avoidance of the threatened harm. *United States v. Wofford*, 122 F.3d 787, 790 (9th Cir. 1997). The justification defense is only available in exceptional circumstances. *Id.* At 790-91. (holding that threats by the Hell's Angels against the defendant's life that were not reported to authorities were not sufficient justification for having a gun in his attic). The defendant must prove by a preponderance of the evidence the elements of his affirmative defense in order to raise it at trial. *United States v. Beasley*, 346 F.3d 930, 935 (9th Cir. 2003); *United States v. Nolan*, 700 F.2d 479, 484 (9th Cir. 1983).

The court prevented a justification defense in *United States v. Lemon*, 824 F.2d 763, 765 (9th Cir. 1987) because (1) there was no "present" threat when the G.I. who had shoved the defendant to the ground had left the scene; (2) the defendant did not attempt a legal alternative by trying to alert the police to the alleged kidnapping or obtain help from nearby friends and; (3) the alleged kidnapper never used excessive or deadly force and therefore there was no reason for Lemon to arm himself. Because Lemon did not meet each of the four elements of a justification defense, neither evidence nor a jury instruction was allowed at the trial. *Id.* In *United States v. Beasley*, 346 F.3d 930, 935-36 (9th Cir. 2003), the court rejected the argument that the defendant was entitled to a reasonable period of time to dispose of the firearm if he was justified in taking possession of it, or a similar jury instruction. Instead the court found that the corollary to the requirement that the defendant have no alternative but to possess the gun, is the requirement that he get rid of the firearm as soon as a safe opportunity arises. *Id.* The court ruled that despite covering his reasons for being in possession of the gun during the closing argument, the jury did not accept the defendant's story that after seizing a gun to defend himself in a street fight and afterwards putting the weapon in his pocket, that throwing the gun into a parking lot while running from the police was adequate to establish a justification defense or merit an altered jury instruction. *Id.* At 932, 936. *See United States v. Johnson*, 459 F.3d 990, 998 (9th Cir. 2006) (quoting *United States v. Mercado*, 412 F.3d 243, 251 (1st Cir. 2005) ("Even if the evidence established only that Mercado held the firearm for a few seconds, he could properly be convicted of possession within the meaning of [U.S.C.] §922(g).")).

Here, there is not sufficient evidence for the defendant to present a justification defense at trial or receive a justification jury instruction. First, there was no present or immediate threat against the defendant when he wandered around the parking lot at the Manresa Lodge for thirty minutes or more with the shotgun in his possession. Like the G.I. in *Lemon*, the defendant's girlfriend, Ms. Watkins, had already departed the area during the time he maintained possession of the weapon. Second, by staying with Ms. Watkins, in an apartment containing multiple guns, he recklessly placed himself in a situation where he would be forced to engage in criminal conduct. He continued his reckless criminal conduct by maintaining possession of the loaded gun in the parking lot. Additionally, he had a legal alternative to maintaining possession of the gun by turning it over to a neighbor, each of whom he was familiar with, and some of whom were without felony convictions, setting the gun down and moving away from it in the parking lot, or like the option in *Lemon,* he could call the police and alert them to the situation so that they could take possession of the gun. Eventually a neighbor, Mr. Houston, convinced him to set the gun outside and enter Mr. Houston's apartment, an option which would have been better exercised earlier. Finally, there was no direct causal link between the criminal action of possessing the shotgun and the avoidance of the threatened harm. Even assuming the truth of his self-defense story (that he took the gun from Watkins to prevent her from using it against him), no causal link exists to explain or justify why the defendant maintained possession of the gun long after the confrontation with his girlfriend ended and until police arrived. In *Beasley*, the justification defense failed when the defendant possessed the gun for only minutes prior to the police's arrival, here, the defendant possessed the gun for much longer and therefore his justification defense fails more easily.

Therefore, because the defendant has not pleaded sufficient facts to raise a justification defense, the jury should not receive such instruction and the defendant should be precluded from raising such a defense.

## B. The Defendant Is Not Entitled to a Justification Jury Instruction

Even if the Court allows testimony during trial about the defendant's defense, he still is not entitled to a separate justification or self defense jury instruction if he fails to fulfill the four elements of his justification defense. *United States v. Lemon*, 824 F.2d 763, 764 (9th Cir. 1987). Generally, a defendant is entitled to jury instructions regarding a theory of the defense if there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent or of doubtful credibility. *Id.* A mere "scintilla" of evidence supporting the defendant's theory is not sufficient to warrant a defense instruction. *United States v. Jackson* 726 F.2d 1466, 1468 (9th Cir. 1984) (per curiam). Evidence which only establishes a portion of the defendant's justification defense will not allow the defendant to meet his burden of proof and therefore receive a justification jury instruction. *United States v. Wofford*, 122 F.3d 787, 792 (9th Cir. 1997) (when the defendant failed to present evidence to establish a factual basis for three of the four elements of his justification defense he did not receive a jury instruction and the jury was told to disregard his entire testimony regarding his defense). *See United States v. Nolan*, 700 F.2d 479 (9th Cir. 1983). Likewise, here, the defendant clearly will not be able to plead sufficient facts to meet the first two elements necessary for the justification defense. While in possession of the firearm, the defendant faced no present threat and he placed himself in a situation where he may be forced to engage in criminal conduct. We request the court to instruct the jury to disregard any justification proffered testimony and that the court give no justification defense instruction.

DATED: July 21, 2008

                                              Respectfully submitted,

                                              JOSEPH P. RUSSONIELLO
                                              United States Attorney

                                              ___/s/_____
                                              JEFFREY B. SCHENK
                                              Assistant United States Attorney