BARRY J. PORTMAN
Federal Public Defender
CYNTHIA C. LIE
Assistant Federal Public Defender
160 West Santa Clara Street, Suite 575
San Jose, CA  95113
Telephone:  (408) 291-7753

Counsel for Defendant RODRIGUEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR-08-00156 JW |
| ) | |
| Plaintiff, ) | DEFENDANT'S PRETRIAL |
| ) | CONFERENCE STATEMENT, MOTIONS |
| vs. ) | *IN LIMINE* AND PROPOSED JURY |
| ) | INSTRUCTIONS |
| STEVEN RODRIGUEZ, ) | |
| ) | Date:   July 24, 2008 |
| Defendant. ) | Time:   9:00 a.m. |
| _____ ) | Court: Honorable James Ware |

**INTRODUCTION**

The government's prosecution of defendant Steven Rodriguez turns upon a brief period the morning of February 23, 2007, during which Mr. Rodriguez took possession of a shotgun belonging to Sophia Watkins, his then-girlfriend, and then awaited the arrival of law enforcement officers.  As to his initial acquisition of the firearm, Mr. Rodriguez would later explain to officers that he had taken the weapon from Ms. Watkins in self-defense after she had assaulted him with it and that he then fled her apartment with little idea how properly to dispose of it.  The government disputes this account, and is expected instead to rely upon the account of Ms. Watkins, a self-admitted drug abuser who had long owned not only the shotgun at issue but several other firearms which she stores in the bedroom of her 16-year-old son.  Government

Defendant's Pretrial Conference Statement            1

1  witnesses Thomas Houston and Peggy Spannbauer, occupants respectively of two other
2  apartment units in the building, persuaded the distraught Mr. Rodriguez to leave the firearm
3  outside of Mr. Houston's door, unloaded and covered in a towel, which he did.  Ms. Spannbauer
4  alerted Mr. Rodriguez that the police were on their way, whereupon Mr. Rodriguez responded
5  that he would remain on the premises, as he believed he had done nothing wrong.  Deputies of
6  the Santa Cruz Sheriff's Office arrived, detained both Mr. Rodriguez and Mr. Houston, and
7  located the firearm outside Mr. Houston's door where Mr. Rodriguez had left it.  The duration of
8  Mr. Rodriguez' possession of the firearm remains in some doubt, given conflicting statements of
9  the percipient witnesses.

## RELEVANT PROCEDURAL HISTORY

11    Mr. Rodriguez served 11 actual months on a revocation of his state parole as a result of
12  this arrest.  Weeks after his release from state custody, he was indicted in this district and
13  arrested.  He made his initial appearance and was ordered detained on April 10, 2008 and has
14  remained in custody since that date.  He was arraigned on the superseding indictment on
15  Thursday, July 17, 2008, and confirmed the current trial date of August 5, 2008.[1]

---

[1] The defense at the July 17 arraignment declined to execute a document styled by the government as a "18 U.S.C. §3161(c)(2) Waiver," and instead stated for the record that Mr. Rodriguez had been made aware of the government's intention to seek a superseding indictment and the nature of the anticipated second count at the time the August 5 trial date was originally set.  Counsel for the government has indicated his office's intention to move for a continuance of the trial date unless the defendant personally signs the "Waiver" consenting in writing to the trial date that he personally confirmed before this Court on July 7, 2008.  The defense continues to maintain that no such written "waiver" is necessary or appropriate, in view of unambiguous Ninth Circuit and Supreme Court authority construing §3161(c)(2).  *See United States v. Flores-Sanchez*, 477 F.3d1089 (9th Cir. 2007); *United States v. Rojas-Contreras*, 474 U.S. 231 (1985).  The defense will oppose any motion to continue the trial date and respectfully submits that dismissal with prejudice would be the appropriate remedy in the event a continuance is granted over its objection and in clear violation of the Speedy Trial Act.

Defendant's Pretrial Conference Statement          2

**DISCOVERY ISSUES**

The government has thus far provided approximately 24 pages of discovery (consisting primarily of documents relating to Mr. Rodriguez' criminal history and felony prior) and a recording of Mr. Rodriguez' statement to local law enforcement. To date it has not furnished criminal history information as to its witnesses, the results of chemical analysis of a blood sample drawn from Mr. Rodriguez in the aftermath of the alleged offense, audio recordings or reports of statements of its witnesses, photographs of evidence seized, police reports of witness interviews, 911 or computer-assisted dispatch data relating to the incident, or any notice or discovery pertaining to evidence purportedly admissible under Rule 404(b) of the Federal Rules of Evidence.

In an effort to avoid unnecessary delay in the progress of the trial, the parties intend to meet and confer regarding disclosure of *Jencks* material, the defense's pending discovery requests, and inspection of the government's evidence and any trial exhibits.

**WITNESSES**

As a precaution, the defense has subpoenaed a number of witnesses who have also been served by the government and who testified previously before the grand jury. Whether it will be necessary to recall those witnesses in the defense case in chief, after they have previously testified on behalf of the government, cannot conclusively be determined until the government at a minimum discloses their prior statements to the defense or after their testimony. The defense may call the following witnesses, depending on the scope of their testimony in the government's case:

   Peggy Spannbauer

   Thomas Houston

The defense is continuing its investigation and may supplement the above list as needed. This list does not include potential rebuttal and/or impeachment witnesses.

1    The defense anticipates that the government will call Sophia Watkins as a witness. Because Ms. Watkins is an admitted long-time abuser of controlled substances with prior drug-related arrests and convictions, and because she is expected to testify that the firearm Mr. Rodriguez briefly possessed (like others seized from her residence) had long been hers, the defense recommends that the Court appoint counsel to advise Ms. Watkins whether to invoke her Fifth Amendment privilege against self-incrimination.

**EXHIBITS**

After the defense has been permitted to inspect and copy the government's evidence, the defense will be better able to determine what, if any exhibits, it intends to introduce in its case in chief. As of the date of this filing, the defense has no exhibits it intends to introduce, but its investigation is continuing.

**MOTIONS *IN LIMINE***

**I.    The Audio Recording of Mr. Rodriguez' Statement to Law Enforcement Should Be Admitted**

The defense respectfully moves this Court for an order admitting the audio recording of Mr. Rodriguez' post-arrest statement to law enforcement, in which he recounts the circumstances leading to his arrest. An extrajudicial statement is not inadmissible as hearsay where offered for a purpose other than to establish the truth of the matter asserted. The recording of this out-of-court statement is admissible for the nonhearsay purpose of establishing Mr. Rodriguez' level of sobriety, coherence and lack of intoxication. Such evidence is relevant in view of the allegation in Count 2 of the superseding indictment that Mr. Rodriguez was a drug abuser at the time of his brief possession of the firearm, the thus-far undocumented government claim that methamphetamine, amphetamine and cocaine were detected a blood sample he provided at the time of his arrest, and in view of the anticipated claim by Ms. Watkins that Mr. Rodriguez' behavior at the time of the offense was erratic and irrational.

1  Moreover, the government has indicated its intention to introduce portions of Mr.
2  Rodriguez' statement (presumably those acknowledging possession of the firearm) as the
3  statement of a party-opponent, but to omit those portions which put that admission in context by
4  explaining how and why he came to be in possession.  It is just such selective redaction of a
5  unitary statement that the rule of completeness prevents: "When a writing or recorded statement
6  or part thereof is introduced by a party, an adverse party may require the introduction at that time
7  of any other part or any other writing or recorded statement which ought in fairness to be
8  considered contemporaneously with it." Fed. R. Evid. 106.  The circumstances surrounding to
9  Mr. Rodriguez' fleeting possession of the firearm are essential to a fair consideration of his
10 admission that he did so possess it.  Accordingly, to the extent that the government introduces
11 any part of it, the whole is therefore admissible.

12 **II.    Evidence of Mr. Rodriguez' Prior Convictions, If Admitted, Should Be Sanitized**

13 In the event that Mr. Rodriguez elects to testify at trial, the defense concedes that his
14 credibility as a witness may be impeached with the fact of his prior felony conviction.  The
15 defense respectfully submits that specific offense of conviction, however, should be excluded,
16 particularly in view of the likelihood that the jury may draw the inference from the conviction for
17 spousal abuse (which involved a victim other than Sophia Watkins) that Mr. Rodriguez has a
18 propensity for violence and that Ms. Watkins was in some manner the victim of domestic
19 violence on the date in question.  Such propensity evidence is inadmissible.  *See* Fed. R. Evid.
20 404(a).  Moreover, no witness, not even Ms. Watkins, has suggested that Mr. Rodriguez was
21 violent with or threatening toward Ms. Watkins, or that Mr. Rodriguez's behavior while in
22 possession of the firearm was in any way aggressive; rather, the defense investigation suggests
23 that Ms. Watkins will merely deny that any struggle took place, whether over the firearm or any
24 object or issue.

25
26

Defendant's Pretrial Conference Statement         5

1  **III.    Evidence of Mr. Rodriguez' Former Gang Affiliation Should Be Excluded**

2  The defense further moves this Court for an order excluding evidence of Mr. Rodriguez'
3  association with *Norteño* or Northern street gangs, and directing the government to admonish its
4  witnesses to refrain from comment regarding such association during their testimony.  Such
5  evidence is both irrelevant and highly prejudicial and is consequently inadmissible.  Fed. R. Evid
6  402, 403.

8  **PROPOSED JURY INSTRUCTIONS**

9  "A defendant is entitled to have the judge instruct the jury on his theory of the defense,
10 provided that it is supported by the law and has some foundation in the evidence." *United States*
11 *v. Mason*, 902 F.2d 1434, 1438 (9th Cir. 1990).  "A failure to give such instruction is reversible
12 error; but it is not reversible error to reject a defendant's proposed instruction on his theory of the
13 case if other instructions, in their entirety, adequately cover that defense theory." *Id.*  As long as
14 there is "even weak supporting evidence, '[a] trial court commits reversible error in a criminal
15 case when it fails to give an adequate presentation of a theory of defense.'" *United States v.*
16 *Newcomb,* 6 F.3d 1129, 1132 (6th Cir. 1993) (citation omitted).  Mr. Rodriguez accordingly
17 requests that the Court instruct the jury as to self-defense and necessity.

18 **I.    Self-Defense**

19 The defense requests that the Court instruct the jury that self-defense against imminent
20 threat of violence is a lawful justification for temporary possession of firearm by an ex-felon or
21 an unlawful user of a controlled substance, and proposed the following language:

22 **You may find the defendant not guilty of possession of a firearm by an ex-felon or**
23 **unlawful user of a controlled substance if:**
24 **(1) the defendant had a reasonable belief that the possession of the firearm was**
25 **necessary to defend himself or another against the imminent use of unlawful force,**
26 **and**

1  **(2) the possession of the firearm lasted no longer than was reasonably necessary under the circumstances.**
3  **The government bears the burden of proving beyond a reasonable doubt that the defendant had no such reasonable belief and that the possession lasted longer than reasonably necessary.**

The Ninth Circuit has previously recognized an affirmative defense of justification and held that the defendant bears the burden of proving, by a preponderance of the evidence, that conduct otherwise constituting a violation of 18 U.S.C. §922(g) was justified. *United States v. Beasley*, 346 F.3d 930 (9th Cir. 2003) (justification instruction appropriate in view of testimony that defendant took possession of firearm from intoxicated friend, for fear that friend might inadvertently shoot someone). Unlike the factual circumstances at issue in *Beasley*, however, the instant case involves not a generic lesser-harms analysis, but rather an actual claim of self-defense against an imminent threat of deadly force by Ms. Watkins. Accordingly, the facts expected to be established at trial mirror closely those of *United States v. Talbott*, 78 F.3d 1183 (7th Cir. 1996) (holding that the government bears the burden of disproving self-defense in prosecution for violation of §922(g)). Although the Supreme Court in *Dixon v. United States*, 548 U.S. 1 (2006) has held that the burden of proof properly falls to the defense to establish certain affirmative defenses such as duress, it did not specifically hold the same of self-defense.

Courts have historically recognized that self-defense, unlike duress, serves an important social purpose. Actions taken in self-defense are considered justified under the law because they promote the public welfare. *See United States v. Newcomb*, 6 F.3d 1129, 1133 (6th Cir. 1993) (noting that one who acts in self-defense or of necessity takes "exactly the action that society thinks the actor should have taken"). Actions driven by duress, by contrast, do not promote the general welfare, and are thus more grudgingly accepted. *See id.* (noting that, unlike self-defense and necessity, duress is "grudgingly" accepted as an excuse for criminal conduct). The Ninth Circuit has made the same distinction. *See United States v. Contento-Pachon*, 723 F.2d 691, 695

(9th Cir.1984) (noting that defendant who smuggled drugs under claim of duress had "mischaracterized evidence of duress as evidence of necessity" and finding no basis for necessity defense where defendant "did not act to promote the general welfare"). Self-defense is a specific variant of justification defenses that the government traditionally bears the burden of disproving beyond a reasonable doubt. *See, e.g.*, *United States v. Sanchez-Lima*, 161 F.3d 545, 549 (9th Cir. 1998); *United States v. Pierre*, 254 F.3d 872 (9th Cir. 2001). Accordingly, the government should here bear the burden of proving beyond a reasonable doubt that the defendant was not in reasonable fear of an imminent use of unlawful force at the time that he possessed the firearm.

## II. Necessity

In the alternative, the defense requests that the Court administer the following instruction on the defense of necessity:

> **You may find the defendant not guilty of possession of a firearm by an ex-felon or unlawful user of a controlled substance if he demonstrates each of the following: (1) that he was faced with a choice of evils and chose the lesser evil; (2) that he acted to prevent imminent harm; (3) that he reasonably anticipated a causal relation between his conduct and the harm to be avoided; and (4) that there were no apparent legal alternatives to violating the law.**

*United States v. Aguilar*, 883 F.2d 662, 693 (9th Cir. 1989).

## III. Reasonable Doubt, Defined

The defense further requests that the Court supplement the Model Ninth Circuit Instruction as to the government's burden of proof. Whether and how to define for the jury the term "beyond a reasonable doubt" are questions that have been the subject of considerable debate. In *United States v. Nolasco*, 926 F.2d 869, 872 (9th Cir.) (en banc), *cert. denied*, 112 S. Ct. 111 (1991), the Ninth Circuit addressed the first question, holding that "the decision [whether or not] to define reasonable doubt [is left] to the sound discretion of the trial court." The defense submits that "[s]ome explanation is necessary to alert the jurors that they must be almost certain before returning a verdict of guilty." *Id*. at 873 (Wiggins, J., dissenting). The government, it is

to be hoped, does not disagree. The *Nolasco* dissent went on to suggest that either of the two instructions under discussion here, the Devitt & Blackmar definition and the Model Ninth Circuit definition (incorporated as the second paragraph of Model Instruction 3.5), would suffice as a definition of "reasonable doubt." *Id*. at 874 (dissent). The Model instruction, however, is unilluminating in its circularity, defining reasonable doubt as "a doubt based upon reason and common sense, and may arise from a careful and impartial consideration of all the evidence, or from lack of evidence." The defense proposes the Devitt and Blackmar model instruction, containing the following operative language:

> A reasonable doubt is a doubt based upon reason and common sense -- the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs.

The purpose of defining the standard, "beyond a reasonable doubt," is to "convey the high standard of proof that the due process clause requires." *Id*. (dissent). To do this, "[j]urors need to be given a connection between the reasonable doubt language and their own familiar decisionmaking processes." *Id*. (dissent). The Model Ninth Circuit instruction on reasonable doubt does not achieve this aim. To instruct that "reasonable doubt is a doubt based upon reason" is incomplete and circular. First, it fails to translate the legal standard into a more concrete or comprehensible concept for the lay jury. Second, it fails to distinguish the reasonable doubt standard from less demanding standards such as clear and convincing evidence. Doubt based on reason and common sense is equally relevant to jury determinations in civil cases; it is the quantum of doubt on which a criminal prosecution turns which requires further explication. In contrast, the Devitt & Blackmar instruction uses the without-hesitation formulation that has been uniformly approved by other courts. This formulation allows a juror to understand the abstract legal standard by relating it to his or her life experiences.

       The comment to the Ninth Circuit's model instruction criticizes the hesitation formulation because it may lead a juror to *under*estimate the degree of certainty required to conclude that a defendant is guilty beyond a reasonable doubt. To the contrary, failure to define

"beyond a reasonable doubt" more explicitly than does the model instruction is much more likely to lead to constitutional error – that the jury convicts on less than the requisite certainty. Quite simply, more guidance, when appropriately given, is better than less guidance because the Constitution demands that jurors <u>not</u> return a verdict of guilty based on a diminished standard of proof.

In sum, use of the Devitt & Blackmar instruction will substantially increase the likelihood that the jury's verdict will be consistent with the constitutional mandate of no criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).

Dated: July 21, 2008

                                    Respectfully submitted,

                                    BARRY J. PORTMAN
                                    Federal Public Defender


                                    CYNTHIA C. LIE
                                    Assistant Federal Public Defender