BARRY J. PORTMAN
Federal Public Defender
CYNTHIA C. LIE
Assistant Federal Public Defender
160 West Santa Clara Street, Suite 575
San Jose, CA  95113
Telephone:  (408) 291-7753

Counsel for Defendant RODRIGUEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>STEVEN RODRIGUEZ,<br><br>　　　　　　Defendant. | No. CR-08-00156 JW<br><br>DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTIONS *IN LIMINE*<br><br>Date:　July 24, 2008<br>Time:　9:00 a.m.<br>Court: Honorable James Ware |

The defense submits the following memorandum in opposition to the government's motion to exclude only exculpatory portions of Mr. Rodriguez' post-arrest statement, and to the government's motion to preclude Mr. Rodriguez from presenting a defense.

## I.    Mr. Rodriguez' Explanation of His Possession of the Firearm Is Admissible

The government argues in essence that because the recording of Mr. Rodriguez' statement "contains statements useful" to Mr. Rodriguez' defense, its admission will create a "defect." Not so. The statement is admissible and relevant as nonhearsay evidence of his sobriety, competence and present mental state. The government has placed Mr. Rodriguez' sobriety on the offense date in issue through its charging decision; at least one of its witnesses is expected to likewise put his mental status in issue through her testimony. Mr. Rodriguez' ability

to answer questions, his subdued and rational affect in so doing, his coherence in narrating the circumstances leading to his arrest, all are relevant to the jury's determination whether a nexus exists between his drug use and his brief possession of the firearm. The government has stated in its Response and Opposition to Defense Motions *in Limine*: "it is our expectation that Mr. Rodriguez will stipulate to drug use on the day of arrest." As characterized, the government's expectation is incorrect, and the parties have since met and conferred telephonically to clarify this point. While it is true that the parties had previously discussed potential stipulations and the defense had indicated its willingness to stipulate to the results of the drug test (assuming documentation of such results is ultimately furnished to the defense) to which Mr. Rodriguez submitted on the day of the arrest, the defense has never agreed, formally or informally, to stipulate that a positive drug test on the date of the offense signified drug use on that same day. Accordingly, Mr. Rodriguez' sobriety for the period in which he had possession of the firearm remains very much at issue.

Moreover, the exculpatory portions of the statement are inextricably linked to the inculpatory statements to be admitted in the government's case in chief and are therefore admissible under the rule of completeness. The government's reliance on *United States v. Ortega* is unavailing. In *Ortega*, the defendant's statements related to factually discrete and divisible aspects of the offense conduct. For example, the defendant's exculpatory statement denying knowledge of methamphetamine and indicia of manufacturing in a garage was severable from his inculpatory statements as to the two pounds of methamphetamine that he had been observed digging up from the yard and delivering to his coconspirator and buyer. Accordingly, neither statement was essential to the interpretation and understanding of the other. Similarly, the defendant's tenuously exculpatory statement that guns found in the residence belonged to his cousin was not essential to comprehension and distinct from his inculpatory statement that the gun he carried on his person was for his personal protection (and to kill the occasional chicken). 203 F.3d 675, 678-679 (9th Cir. 2000).

In the instant case, Mr. Rodriguez' acknowledgment of his possession of the firearm cannot be separated from his explanation of how his possession came to be, without significantly misleading the jury. His post-arrest statement is in this respect indistinguishable from the statement at issue in *United States v. Castro-Cabrera*, 534 F.Supp.2d 1156 (C.D. Cal. 2008). In *Castro-Cabrera*, the district court rejected the government's attempt to admit only the inculpatory portion of the defendant's statement to immigration officials, ruling instead that the exculpatory portions were essential to a full and fair understanding of the statement:

> Here, the Rule of Completeness warrants admission of the statement (1) in its entirety or not at all. If the Court excluded the first portion of Defendant's sworn written statement, where he asserts that the United States may be his country of citizenship through his mother, this would distort the context of the latter portion of the statement. Defendant was asked essentially two similar questions regarding citizenship status in immediate succession. Defendant gave two answers: first, "Hopefully United States through my mother" and second, "I guess Mexico until my mother files a petition."
>
> By itself, the answer "I guess Mexico until my mother files a petition" suggests that Defendant believes he is currently a Mexican citizen. Read together, the answers are less conclusive. The two answers could alternatively mean that Defendant believes he has dual citizenship. On the other hand, the two answers could mean that Defendant was uncertain regarding his citizenship status. The point is that reading the statements in context results in one set of possible meanings, whereas reading the latter statement in isolation tends to create a different meaning. There is a serious risk that presentation of only the latter answer, separate and apart from the one before it, would distort, misrepresent, or confuse the meaning of the Defendant's statement.

*Id.* at 1160. The district court specifically distinguished *Ortega* on the ground that the statements there at issue were neither written nor recorded, and therefore were not within the ambit of Rule 106, and that there was in *Ortega* "no indication . . . that the offered portions of statements created distortion or misrepresentation of the meaning of the statement. Although the Rule of Completeness cannot serve as an end run around the prohibition on inadmissible hearsay, this principle does not allow the Government to offer abridged portions of statements that distort the meaning of a statement." *Id.* at 1161 n.6. The very purpose of the rule of completeness is to permit the introduction in evidence of otherwise inadmissible hearsay, where necessary to clarify

Defendant's Opposition to Government's Motions
*in Limine*               3

1  portions admitted under an existing hearsay exception;[1] were it otherwise, the rule would be
2  wholly superfluous.

3  **II.    Exclusion of Evidence of Self-Defense and Failure to Instruct the Jury as to Any
         Defense Suggested by the Evidence Would Violate Mr. Rodriguez' Sixth, Fifth and
4        Second Amendment Rights**

5       The government, in urging this Court to foreclose any defense before the commencement
6  of trial, in essence invites the Court to violate Mr. Rodriguez' Sixth Amendment right to present
7  a defense and his Fifth Amendment right to due process of law.  This Court cannot determine
8  that self-defense is unavailable as a matter of law.  It may, after consideration of the evidence,
9  determine that there is insufficient evidentiary foundation to warrant administration of a
10 particular jury instruction, but its authority to decline instructions has been carefully
11 circumscribed: a defendant is "entitled to have presented instructions relating to a theory of
12 defense for which there is any foundation in the evidence, even though the evidence may be
13 weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Lemon*, 824 F.2d
14 763, 764 (9th Cir. 1987) (citations omitted).  Nor do the facts of *Lemon* provide the government
15 with an adequately analogous evidentiary situation.[2]  In *Lemon*, the evidence apparently
16 supported an inference that the defendant has possessed the firearm at issue at multiple points in
17 time over the course of a full day, such that unanimity instructions had been sought to clarify the
18 jury's analysis.  *Id.*

19      Moreover, the government's overly restrictive gloss on 18 U.S.C. §922(g) runs counter to
20 the Second Amendment.  The exact language employed by the government in formulating this
21 invitation – that "[t]he courts have ruled that federal firearms laws impose something

---

[1] It should also be noted that Mr. Rodriguez' post-arrest statement may also be admissible as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.  Fed. R. Evid. 803(1).

[2] The exposition of the facts at issue in *Lemon* is somewhat opaque.  It is clear that the panel concluded there was no evidentiary foundation for a defense instruction.  What is less clear is what evidentiary foundation the defense established.

Defendant's Opposition to Government's Motions
*in Limine*                                              4

1   approaching absolute liability on felons in possession of weapons" – was soundly discredited by

2   the Ninth Circuit over a decade before the Supreme Court's landmark decision in *District of*

3   *Columbia v. Heller*, 554 U.S. ___ (2008):

> The government points to *United States v. Nolan*, 700 F.2d 479, 484 (9th Cir. 1983) . . . implying that the justification defense is not available in felon-in-possession cases. *See* Appellee's Br. at 16 ("As explained by this Court in *United States v. Nolan*, . . . federal firearms laws impose something approaching absolute liability."); *see also id.* at 20-21. *Nolan* . . . , however, did not go quite so far. *See Nolan*, 700 F.2d at 484 ("Rather than rule that self defense is never available, courts have generally ruled that the defendant has not pleaded facts sufficient to raise the defense."); . . . ; *see also United States v. Panter*, 688 F.2d 268, 271 (5th Cir. 1982) ("We do not believe that Congress intended to make ex-felons helpless targets for assassins."). In fact, in [*United States v.*] *Paolello*, the Third Circuit reversed the conviction because the district court had refused to instruct the jury on the justification defense. 951 F.2d at 542-44.

*United States v. Gomez*, 92 F.3d 770, 774 (9th Cir. 1996). In *Heller*, the Supreme Court

recognized that the Second Amendment of the U.S. Constitution "confers an individual right to

keep and bear arms" unconnected with service in a militia, and that central to the Second

Amendment right is the right to self-defense. In *dicta*, the *Heller* majority stated that "nothing in

our opinion should be taken to cast doubt on longstanding prohibitions on the possession of

firearms by felons." *Id.* at *54-55. These prohibitions, however, were not before the Court,

which expressly declined to "undertake an exhaustive historical analysis of the full scope of the

Second Amendment" in relation to this issue. *Id.* at *54. The Court ultimately signaled that such

prohibitions would require future analysis and justification in cases yet to come:

> [B]ut since this case represents this Court's first in-depth examination of the Second Amendment, one should not expect it to clarify the entire field . . . And there will be time enough to expound upon the historical justification for the exceptions we have mentioned if and when those exceptions come before us.

*Id.* at *63.

The defense does not here challenge the facial constitutionality of 18 U.S.C. §922(g) or suggest that an ex-felon or unlawful user of a controlled substance has a Second Amendment right to possess firearms for defense against the unexceptional potential for threats to person or property. Nor does the defense contend that the government generally bears the burden of

1 disproving any affirmative defense or justification for a firearms charge. Rather, the defense
2 submits that self-defense against an imminent threat represents a unique circumstance under the
3 reasoning of *Gomez* and *Heller*, and that where an accused raises a colorable claim of an
4 imminent threat of serious injury or death, the government bears the burden of disproving self-
5 defense, and that its burden of persuasion is properly proof beyond a reasonable doubt.

**CONCLUSION**

For the foregoing reasons, the defense respectfully requests that the government motions *in limine* be denied.

Dated: July 23, 2008

                                          Respectfully submitted,

                                          BARRY J. PORTMAN
                                          Federal Public Defender

                                          CYNTHIA C. LIE
                                          Assistant Federal Public Defender